In the Matter of the Construction of the Will of CORA E. LEWIS, Deceased.

Surrogate's Court, Cattaraugus County, May 22, 1953.

*Curtis S. Bates,* as administrator with the will annexed of Cora E. Lewis, deceased, in person.

*George Gundlach* for Bertrand C. Chaffee Hospital.

*Theodore Burd* for Blocher Homes of Williamsville.

*T. Kayler Jenkins* for Home for the Friendless.

*James S. Pierce, County Attorney,* and *Hazard E. Robinson, Cattaraugus Commissioner of Public Welfare,* in person, for County of Cattaragus Welfare Department.

*Herman Lavery,* special guardian.

*Nathaniel L. Goldstein, Attorney-General (Michael P. Geraci* of counsel), in his statutory capacity under section 12 of the Personal Property Law and section 113 of the Real Property Law.

*Earl Westover,* as Supervisor of the Town of Yorkshire, in person.

*Edward B. Horning* for Kenneth A. Gould, as administrator of the estate of Albert Gould, deceased.

PREY, S. Cora E. Lewis died a resident of the village of Delevan, Cattaragus County, New York, on the 11th day of August, 1944. She left a last will and testament dated November 3, 1938, which was duly admitted to probate by the Surrogate of Cattaraugus County on the 6th day of November, 1944, and letters testamentary were duly granted to Claude Ellis, the executor therein named.

In order to obtain a clear understanding of this proceeding, I feel it is of importance to review briefly the proceedings which have preceded the one presently under consideration, and to also set forth a copy of that paragraph of the deceased's will, construction of which is being sought, and in the course of which this proceeding is necessary. The " EIGHTH " paragraph of the will of said deceased is as follows:

" All of the rest, residue and remainder of my property, real, personal and mixed and wheresoever situated, except the mortgage, if it be unpaid at my death, which is dated June 26, 1915 and given by Samuel H. Townsend and wife to Earl M. Lewis for $2000.00 and recorded in the Erie County Clerk's Office in Liber 683 of Mortgages at page 552, I give, devise and bequeath to Lewis Memorial Home, Inc., a corporation to be incorporated as hereinafter provided, in trust, however, for the following purpose: Said corporation to invest and re-invest the funds of my estate from time to time as may be necessary and to use the income only therefrom together with the residence property situate in the hamlet of Delevan for the purpose of establishing an old ladies home for worthy and indigent elderly ladies who may be residents of the Town of Yorkshire, Cattaraugus County, New York.

" During the lifetime of Claude Ellis, if he survives me, and the lifetime of his son, John P. Ellis, if he succeeds Claude Ellis as Executor of this, my last Will and Testament, and as soon as practical after my death I direct that my Executor organize a membership corporation under the Membership Corporations Law of the State of New York and with the approval of the State Board of Charities to be known as ' Lewis Memorial Home, Inc.' and that so many of the following named persons as will act serve as incorporators of said corporation, namely: Richard Owens, Millard King, Claris Persons, whoever is the president of the Bank of Delevan at the time of my death, a representative to be chosen from the Ladies Aid Society of Methodist Episcopal Church of Delevan, whoever is the pastor of the Methodist Episcopal Church of Delevan at the time of my death, whoever is the President of the School Board of Delevan High School at

the time of my death, whoever is the eldest practising physician at Delevan at the time of my death, whoever is Supervisor of the Town of Yorkshire at the time of my death and whoever is Principal of Delevan High School at the time of my death. Regardless of whether all of the above named individuals sign the certificate of incorporation or otherwise, it is my desire that the by-laws of the said corporation shall contain a provision that the President of the Bank of Delevan at all times, a representative chosen by the Ladies Aid Society of the Methodist Episcopal Church of Delevan at all times, the pastor of the Methodist Episcopal Church of Delevan at all times, the president of the School Board of Delevan High School at all times, the eldest practising physician in Delevan at all times, the Supervisor of the Town of Yorkshire at all times and the Principal of Delevan High School at all times shall be members of the said corporation and it is also my desire, although not obligatory, that all of the members of said corporation act as its trustees. No successor to Richard Owens, Millard King or Claris Persons upon their respective deaths or resignations need be appointed.

"I direct that the said incorporation serve as such trustees without bonds, and that no bonds be required of its trustees.

"I direct that a suitable tablet containing the name 'Lewis Memorial Home, Inc.' be erected on premises and that the cost of such erection and the cost of incorporating the said corporation be borne from the principal of my estate.

"The purpose of the bequest to said incorporation is to supply board and lodging to such worthy and indigent elderly ladies as may be taken into said home, the Board of Directors of said corporation to have full discretion as to who shall be taken and as to the length of time for which any applicant may be cared for.

"It is my desire that the expenses of clothing, burial and physician's attendance for any inmate be borne by local charitable institutions or by the Welfare Department of the County.

"It is my desire that the number of inmates be limited at all times so that the income from the trust fund will properly sustain them.

"It is my desire that the organization be entirely charitable and nonsectarian and that no charge be made for admittance unless circumstances should so change as to make it impractical to maintain the home without charge, in which event the Board of Directors shall have the privilege of making such a charge for admittance as is necessary that the home shall properly function.

"I direct that the mortgage above excepted from my residuary

estate, if it be unpaid at the time of my death, be assigned to said corporation and that the income therefrom be paid to Florence Townsend, wife of Samuel H. Townsend, during her natural lifetime and that, upon her death, the said mortgage shall become a part of my residuary estate and belong to the said incorporation.

" I direct that my Executor sell only so much of the securities constituting a part of my estate at the time of my death as may be necessary to pay debts, expenses of administration and legacies other than the residuary legacy and that my said Executor transfer the remaining securities constituting my residuary estate to the incorporation herein provided to be made and that the trustees of said incorporation use their judgment with regard to the retention or sale of said securities.

" I hereby direct that neither the said incorporation nor its Trustees shall be liable for any loss suffered by reason of the retention of any security owned by me at the time of my death.

" I further direct that said incorporation shall invest only in such securities as are lawful investments for a Saving Bank."

In order to carry out the terms of the will and to organize a corporation to carry out the directions of the trust therein attempted to be created, Claude Ellis, the executor, sought the approval by the New York State Board of Social Welfare of the corporation certificate which has been approved by the Supreme Court. The New York State Board of Social Welfare refused to approve the organization of the corporation on the grounds that the funds of the estate were insufficient to maintain the purpose of the trust, and on a proceeding in mandamus to compel the New York State Board of Social Welfare to set aside the resolution of its refusal, the petition of the executor was dismissed and on appeal to the Appellate Division, Fourth Department, the order of dismissal was affirmed. (*Matter of Ellis* [*N. Y. State Bd. of Social Welfare*], 275 App. Div. 740.)

It then became apparent that a strict compliance of the terms of the trust could not be carried out, and the executor in a proceeding duly instituted was authorized to sell and dispose of the real property of the deceased, and other assets in the nature of securities were reduced to cash. The executor then began a proceeding for the construction of the will and the application of cy pres under section 12 of the Personal Property Law and section 113 of the Real Property Law of the State of New York, by petition, and a citation was made returnable before this court on January 25, 1950. After many hearings and adjournments, the undersigned by memorandum dated June 10,

1950, determined that the deceased did not by the "Eighth" paragraph of her will create a general charity; that cy pres, therefore, could not be applied and that the deceased died intestate as to her residuary estate.

On appeal to the Appellate Division of the Supreme Court, Fourth Department, the findings of the undersigned were reversed and by order of the Appellate Division dated May 2, 1951, the matter was remitted to the Surrogate's Court, Cattaraugus County for such further proceedings as may be necessary in order that the Surrogate may give such instructions for the administration of the trust as will most effectively accomplish the general charitable purposes of the bequest. (*Matter of Lewis,* 278 App. Div. 888.)

Claude Ellis, the executor, died before this proceeding was instituted and Curtis S. Bates was duly appointed administrator with the will annexed, and he duly petitioned this court to make a determination in accordance with the instructions of the order of the Appellate Division.

Citation addressed to all distributees and to certain institutions, including the County of Cattaraugus, as had evidenced an interest in qualifying as potential recipients of the funds of this estate "cy pres" was duly served either by personal service or by due publication of said citation in two newspapers published in the County of Cattaraugus, namely, the *Post* published at Ellicottville, New York, and the *Cattaraugus Times* published at Cattaraugus, New York, returnable before this court and the undersigned on April 20, 1953.

Three private institutions appeared by duly qualified representatives and either presented testimony tending to qualify them as possible recipients of the trust estate or made formal statements as to their respective qualifications. The County of Cattaraugus through its Commissioner of Public Welfare and the County Attorney also were heard on the subject.

I will discuss the several institutions and the one county municipality appearing in this proceeding in the order in which the proofs or their statements were taken.

The Commissioner of Public Welfare of the County of Cattaraugus, Hazard E. Robinson, was sworn and testified as to the facilities maintained by the County of Cattaraugus at the County Home at Machias for the care of aged, indigent persons, going into considerable detail concerning the facilities at the county home and of the infirmary maintained at the county home, the cost of maintenance per individual at the county home; that there was available space for the worthy, indigent, elderly women

of the town of Yorkshire; that certain rooms could be set aside to care for such persons with an appropriate plaque to designate them as the "Cora E. Lewis Memorial" or other suitable language to indicate that said quarters were being supplied by the Cora E. Lewis trust.

The County Treasurer, Samuel Henning, testified that the funds of such trust could be held separate from other county funds and that the income could be used exclusively for the care and maintenance of worthy, indigent, elderly ladies of the town of Yorkshire *without charge* when the funds were disbursed on order of the Commissioner of Public Welfare.

Mr. Theodore Burd, attorney at law, and treasurer of the Blocher Homes located at Williamsville, New York, was next heard on the question, and he testified at length as to the facilities available at the Blocher Homes, its financial status, the regulations for admission and other data concerning the management and operation of the said Blocher Homes. He expressed a willingness on behalf of said home to accept the trust estate, if designated to receive it, and stated that the home would be able to use the income therefrom for the benefit of worthy, indigent, elderly ladies of the town of Yorkshire. He also expressed their willingness to erect a suitable plaque memorializing Cora E. Lewis. It appears that the Blocher Homes institution has an endowment fund in excess of $500,000 exclusive of buildings and equipment, and is under State welfare supervision; that it is nonsectarian, and admits both aged men and women, if they qualify physically, the institution reserving the right of rejection for infirmity, either mentally or bodily, of any person, for the reason that they are not equipped to care for the chronically ill or infirm in mind. Mr. Burd further stated that the requirements of deposit by an applicant, of the sum of $2,000 in order to be accepted into the institution would be waived as to women otherwise qualified from the town of Yorkshire if the funds of the Cora E. Lewis estate were given to them for use in the care of such qualified persons from the town of Yorkshire.

The Home for the Friendless located at 1800 Main Street in the city of Buffalo, New York, was represented by T. Kayler Jenkins of the firm of Hellings, Ulsh, Morey & Stewart, attorneys, and he gave an informal statement on the qualifications of said home, but later in a letter addressed to the undersigned, dated April 22, 1953, and subsequent to the hearing, Mr. Jenkins stated that the Home for the Friendless under its rules, regulations and by-laws could not accept a person into said Home for the Friendless, not a resident of the city of Buffalo, or who had not

been a resident of the city of Buffalo, since article 9 of their by-laws requires that an applicant must be or have been a resident of the city of Buffalo. The Home for the Friendless, therefore, is eliminated as a possible recipient of the funds of this estate.

The Bertrand Chaffee Hospital represented by attorney George J. Gundlach, offered the sworn testimony of Harry C. Walker, administrator of the hospital, and also that of Carlos E. Harrington, president of the board of directors of said hospital. This institution started out as a small home for the aged, established in 1937, and during the years and through formal legal proceedings has become a general hospital. This institution openly seeks the funds of this estate to be used for capital improvement, and because of the status of their present institution, financial and otherwise, in my opinion, does not and cannot qualify as a proper institution to administer the funds of this estate " cy pres ". It was their hope that the funds of this estate could be given to them for the purpose of building construction under some kind of an arrangement which would make possible charitable care of the persons designated in the last will and testament of the deceased. In view of the fact that under the terms of the will of this deceased, only the income can be used, such an arrangement could not be decreed or authorized.

So far as the court has been able to ascertain, there is no private institution located in the county of Cattaraugus dedicated to the care and maintenance of aged, indigent people.

It is, therefore, apparent that the possible recipient of the funds of this estate narrows down to two potential recipients, namely, the Blocher Homes at Williamsville, New York, or the County of Cattaraugus, the funds to be administered by the Commissioner of Public Welfare.

It is extremely difficult to give instructions for the administration of this trust in such manner as will most effectually carry out the general charitable purposes of the bequest for several reasons:

1. The testatrix directed that her residence in the hamlet of Delevan be used to establish an old ladies home.

2. For worthy, indigent ladies of the town of Yorkshire.

3. To supply said elderly women with food and lodging, with full discretion in the board of directors of the proposed corporation which was to receive the funds of this trust, as to who should be taken into said home, if and when it was established, and for as long as they were to be permitted to stay.

4. Their clothing, burial expense and medical expense was to be borne by local charitable institutions or by the County Welfare Department.

5. The number of women to be cared for was limited at all times so that the income of the trust would sustain them.

6. Such institution was to be designated by a plaque or tablet erected on the premises, containing the words "Lewis Memorial Home, Inc."

7. With power in the board of directors of the proposed corporation to charge for the care and support furnished if the funds of the trust were insufficient to maintain the home.

8. The size of the trust is such that the annual income under legal investments as limited by the will would not exceed $1,800 per year, and might possibly be substantially less than that figure.

The provisions of the testatrix' will are so specific and the administration of its funds is so circumscribed that to spell out a general charitable purpose, one has to substantially write a new will for the deceased.

The language of the testatrix' will indicates her great desire that the estate be administered in the county of her domicile. To direct, therefore, that the funds of this estate be paid over to the Blocher Homes at Williamsville, New York, or to any other institution outside the county would, in my opinion, be contravening the true intent of the testatrix. She desired that the worthy, indigent, elderly ladies of the town of Yorkshire should be cared for in her home in the village of Delevan, located in said township. She obviously did not wish to impose on them the burden of journeying to some distant place away from their friends, families and their accustomed habitat.

It has been stated that where the testator has manifested an intent that his gift inure to the benefit of the residents of a specific village, town, city or other municipality, some effort is made by the courts to keep the charity within the same geographical region, and if this is not possible, that the charity may be established in another area with the provision that the benefits of the gift be extended only to the residents of the locality originally specified by the testator. (Fisch on Cy Pres Doctrine in United States, p. 219.)

While the court is not compelled to award the proceeds to a charity in the same area, the undersigned feels that under the circumstances and the interpretation given to the language contained in the will of this testatrix, that her intent to benefit certain residents of the town of Yorkshire should be carried out.

The county home maintained by the County of Cattaraugus for the care and maintenance of old, indigent people is situated at Machias only a few miles south of the village of Delevan in the township of Machias, which adjoins the township of Yorkshire. Here the County of Cattaraugus provides trained women nurses and medical attention for all of the persons residing there. The County of Cattaraugus is empowered by law (County Law, § 215) to accept by gift real and personal property for lawful county purposes and a gift of money to be used in caring for the poor is a lawful purpose (*Matter of Lane*, 201 Misc. 1003).

It is my conclusion, therefore, that the County Commissioner of Public Welfare of the County of Cattaraugus can most effectually carry out the charitable purpose and intent of the testatrix by using the facilities of the county home at Machias for the care and support of worthy, indigent elderly ladies of the town of Yorkshire, using the income of the residuary funds of this estate for such purposes.

I, therefore, direct that the funds of the estate remaining after the payment of the costs and expenses of administration be paid over by the administrator *c.t.a.* to the County of Cattaraugus by paying the same into the hands of the County Treasurer, to be known as the Cora E. Lewis trust fund, and held and invested by him and his successors in office in the manner directed in the " Eighth " paragraph of the last will and testament of this deceased, and that the annual income therefrom be paid out by him on the order of the Commissioner of Public Welfare and his successors in office, who shall be empowered by decree of this court to administer said income and expend the same in such manner as in his or their judgment will most effectually accomplish the general purpose of the last will and testament of said deceased without regard to, and free from, any specific restriction, limitation or.condition in said will, and that title to said funds, and the income thereof, is hereby vested in the County of Cattaraugus for such purpose, and I further direct that said County Treasurer and the Commissioner of Public Welfare and their successors in office report to this court annually their acts in the administration of said trust.

Settle decree accordingly on ten days' notice to all interested parties appearing on this proceeding.